# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICHARD J. SIMPSON

        Plaintiff                CASE NO.: 2:07-CV-12609

vs.

PATRICIA CARUSO, et al.            DISTRICT JUDGE GEORGE CARAM STEEH
                                        MAGISTRATE JUDGE STEVEN D. PEPE

        Defendants

_____/

## Report and Recommendation to Grant
## Defendants' Motions for Summary Judgment (Dkt. ## 58 and 75)

On June 19, 2007, Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 alleging deliberate indifference, retaliation,[1] cruel and unusual punishment and inhumane treatment in violation of his Eighth Amendment Rights (Dkt. # 1).

On September 28, 2007, Defendants Correctional Medical Services, Keith Ivens, M.D., Michael Kennerly, P.A., Jason Yungsup Kim, M.D., Jane May, R.N., Muhammad Mustafa, M.D., William Nelson, M.D., Luis Nino, M.D., and Mohammad Hadid, M.D., filed a motion for summary judgment (Dkt. # 58). On October 24, 2007, Plaintiff responded to this motion (Dkt. # 73) and Defendants replied on October 30, 2007 (Dkt. # 74).

On October 31, 2007, Defendants Patricia Caruso, George Pramstaller, Jan Epp, Leslie Wight, Allen (Y. Ellen), Beth Stevens (Stevenson), Mark L. West, Evelyn R. Pietrangelo, Joseph B. Damron, Gerald Covert, Cher J. Luxton, Shirlee Harry, Mark J. Kelly, Tamerla Hamilton,

_____

[1] Plaintiff does not address retaliation in any of his grievances, and thus has not exhausted this claim.

Rhonda K. Cooper, Amy L. MacDowell and Wendy L. Ball (collectively "MDOC defendants") filed a motion for summary judgment (Dkt. # 75). Plaintiff responded to this motion on November 26, 2007 (Dkt. # 77).[2] All pretrial matters were referred to the undersigned on August 20, 2007 (Dkt. # 17).

## I. FACTUAL BACKGROUND:

Plaintiff's complaint names 36 Defendants alleging that their deliberate indifference led to the provision of inadequate medical care causing Plaintiff constant pain and discomfort. *Id.* Between January 2002 and August 2003, Plaintiff filed 43 grievances alleging a variety of claims against Defendants (Dkt. # 75, Ex. A and Dkt. # 58, Ex. R). Plaintiff claims that his diagnosis of chronic lung disease, rib cage pain and acid reflux warrant tests for lung cancer (given his family history for cancer) or for other pulmonary problems which various Defendant Doctors have denied. While a prisoner he has had surgery preformed on his left knee, and apparently his left shoulder, he needs surgery on his right knee and lower back. While acknowledging requests for postponement due to family "emergencies," Plaintiff denies he has refused such surgery as the Defendants assert. He claims he needs a new knee brace and total reconstruction of both knees and not merely pain medication that treats only the symptoms. Additionally, Plaintiff suffers from Follictolitis, a skin disease, for which he claims he is being denied proper soaps and lotions for treatment.

## I. LEGAL STANDARD

### A. Prison Litigation Reform Act

---

[2] Plaintiff's motion is titled "RESPONSE to 58 MOTION to Dismiss or for Summary Judgment Pursuant to FRCP 12(B)(6) or 56(b)," but it is clear that Plaintiff is responding to Dkt. # 75.

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring an action in federal court. *Woodford v. Ngo*,126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement. In *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. It may still be raised as an affirmative defense by defendants.

**B.      Standard for Liability Under § 1983**

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the

deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994) (citing *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S. Ct. 872 (1992)). Respondeat superior is not a basis for liability under 42 U.S.C. § 1983, *Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989), unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

## C.    Deliberate Indifference

"Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained the meaning of "deliberate indifference:"

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . Eighth Amendment suits against prison officials must satisfy a "subjective" requirement .
> . . .

511 U.S. at 836-37 (emphasis supplied). *See also Estelle*, 429 U.S. at 105-06 (stating that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (stating that deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good

faith error, characterizes deliberate indifference.").  Accordingly, even "gross negligence" by prison officials is insufficient to support a deliberate indifference claim.  *Ribble v. Lucky*, 817 F. Supp. 653, 655 (E.D. Mich. 1993).  As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106.  Delay in access to medical attention can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'"  *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (per curiam), *cert. denied*, 496 U.S. 928 (1990)).  The Sixth Circuit has stated that:

> [w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake*, 537 F.2d at 860-61 n.5.

## D.  Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).   In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the

non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

Summary judgment is improper, however, if the non-movant has not been afforded a sufficient opportunity for discovery.  *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir. 1994), *accord Plott v. General Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505, 2511 n. 5, 91 L. Ed. 2d 202 (1986)), *cert. denied,* 517 U.S. 1157, 116 S. Ct. 1546 (1996).  The non-movant bears the obligation to inform the district court of his need for discovery, and before a summary judgment motion is decided, he must file an affidavit pursuant to Fed. R. Civ. P. 56(f) which details the discovery needed, or file a motion for additional discovery.  *Vance By and Through*

*Hammons v. U.S.*, 90 F.3d 1145, 1149 (6th Cir. 1996) (footnotes omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted). If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment, without permitting him to conduct any discovery at all, will constitute an abuse of discretion. *Vance By and Through Hammons*, 90 F.3d at 1149.

## II.  ANALYSIS

### A.  Exhaustion of Grievances:

At the time of the incidents which give rise to the present action, Plaintiff was incarcerated at Huron Valley Men's Facility ("HVM"), Muskegon Correctional Facility ("MCF"), Macomb Correctional Facility ("MRF"), and Chippewa Correctional Facility ("URF"), all part of the Michigan Department of Corrections ("MDOC"). Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. Policy Directive 03.02.130 Preamble. These requirements are laid out in MDOC Policy Directive, PD 03.02.130 (effective 12/19/03), Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD 03.02.130(R). If he is

dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD 03.02.130(T). This form must be filed with a designated Grievance Coordinator within five business days of the prisoner's informal attempt at resolution. PD 03.02.130(X).

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD 03.02.130(DD). The Step II respondent is designated by the Policy Directive, such as the Parole Board Chairperson for grievances involving the Parole Board. If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

From January 2002, until August 2007, Plaintiff filed more than 40 grievances many of which were ultimately rejected by the prison reviewers for being untimely, duplicative or raising non-grievable issues. Plaintiff attached many of these rejected grievances to his complaint, asserting that he exhausted the administrative remedies for each one as set out by the Policy Directive. A discussion of each grievance follows, categorized by those that are (I.) dismissed by Plaintiff's agreement, (ii.) are beyond the statute of limitations, (iii.) are not exhausted at time of filing, (iv.) are not related to this litigation, (v.) were not timely filed or (vi.) involved duplicative issues. There follows (vii.) an analysis of those claims related to grievances that were properly exhausted by Plaintiff where he complied with all prison grievance procedures.

(I.) **Claims Plaintiff Agrees Should be Dropped:**

Plaintiff, in his responses to Defendants' motions for summary judgment agreed that the

following grievances should be dropped due to either his failure to properly exhaust the appeals process or due to the tolling of the statute of limitations (Dkts. # 73 & 77).

1.  <u>MRF-2004-10-1154-12I:</u> This grievance, filed on October 13, 2004, and naming only Dr. Nino, should be dismissed as Plaintiff acknowledged that he did not pursue this grievance to Step III (Dkt. # 73, p. 9, Dkt. # 58, Ex. R).

2.  <u>HVM-2004-01-10-12D3:</u> Filed in December 2003, Plaintiff acknowledged that this grievance is barred by the statute of limitations (Dkt. # 73, p. 9).

3.  <u>LRF-2002-01-98-12D1:</u> Filed on January 12, 2002, Plaintiff acknowledged that this grievance is barred by the statue of limitations (Dkt. # 58, Ex. N).

**(ii.) <u>Claims Barred by Statute of Limitations:</u>**

4.  <u>HVM-2003-04-368-01b:</u> While not addressed by Plaintiff, this grievance is barred by the three year statute of limitations because it was filed on April 7, 2004.  Plaintiff filed his complaint, for this suit, on June 19, 2007.  Grievances filed prior to June 19, 2004, are outside Michigan's 3 year statute of limitations for personal injuries and as such are barred.[3]

**(iii.) <u>Claims Not Exhausted by Time of Filing:</u>**

Several of Plaintiff's outstanding grievances, while not addressed in his complaint, are on the MDOC's current grievance screen which lists all grievances filed by Plaintiff (Dkt. # 78, Ex. A).  The following grievances, filed between May 3 and August 13, 2007, are dismissed from the suit because they were not exhausted when Plaintiff filed the present suit (Dkt. # 75, Ex. A): MCF-2007-05-425-28b; MCF-2007-07-645-12z; MCF-2007-07-644-12i; MCF-2007-07-647-12z; MCF-2007-07-646-12f; and MCF-2007-08-776-27b.  These grievances are not ripe for litigation.

**(iv.) <u>Grievances Not Related to this Litigation:</u>**

Several of Plaintiff's outstanding grievances, while not addressed in his complaint, are on

---

[3]*See* M.C.L. § 600.5805(8).

the MDOC's current grievance screen which lists all grievances filed by Plaintiff (Dkt. # 78, Ex. A). Of those on the screen, the following are not relevant to the present litigation because they do not relate to the issues raised in Plaintiff's complaint.

5. <u>URF-2005-06–1177-21c:</u> Defendants note that "21c" is the code for security issues meaning that this grievance relates to Plaintiff's security classification and as such is not related to the present litigation (Dkt. # 75, p. 1).

6. <u>URF-2005-07-1232-12z:</u> Defendants note that "12z" refers to a request for records, and as such is not related to present litigation (Dkt. # 75, p. 1).

7. <u>MRF-2005-06-803-15b:</u> This grievance has "15b" listed on its code. "15b"refers to a mail-related grievance (Dkt. # 75, Ex. I).

8. <u>200237-27b:</u> Plaintiff named several Defendants in this grievance which complains of efforts to address Plaintiff's filing of grievance (Dkt. # 58, Ex. B). The grievance does not address any specific medical issue, and the grievance was dismissed for failing to address a grievable issue.

**(v.) <u>Untimely Claims :</u>**

The Policy Directive requires a prisoner to comply with certain deadlines in order to exhaust his administrative remedies. An informal attempt at resolution must be made within two business days of the prisoner's first becoming aware of a grievable issue. PD 03.02.130(R). The Step I form must be filed within five business days of the informal attempt; if the prisoner is dissatisfied with the Step I response, he has only five business days after receiving the response to obtain an appeal form and another five days to file a Step II appeal. PD 03.02.130(X), (DD). A prisoner has 10 business days after receiving a Step II response to file a Step III appeal. PD 03.02.130(HH). Because the informal attempt must be made no later than two business days after the prisoner first becomes aware of an issue, whether or not an issue is ongoing makes no difference in the application of the deadlines. A prisoner cannot excuse the delay beginning the

grievance procedures by calling the issue "ongoing."

A grievance submitted beyond the time frames established by the Policy Directive will be rejected unless "there is a valid reason for the delay; e.g. transfer." PD 03.02.130(G)(4). If a prisoner does not comply with these deadlines, he has not exhausted his administrative remedies. *Woodford*, 126 S. Ct. 2386.

The following grievances were dismissed for failure to follow the Policy Directive's time frames:

9.    MCF-2006-01-52-12F: On January 19, 2006, Plaintiff filed this grievance naming Dr. Kim and complaining that Plaintiff was not receiving refills of his jock-itch antifungal cream (Dkt. # 58, Ex. X). Plaintiff's grievance was dismissed at Step III as untimely because it was filed more than 10 business days after Plaintiff received his Step II response. Plaintiff acknowledged receiving his Step II response on March 1, 2006, but did not appeal within the required 10 days, waiting to file his appeal until March 21, 2006.

10.   MRF-2005-06-904-12D[4]: This grievance was received on February 22, 2006, and was dismissed as untimely at Step III (Dkt. # 58, Exs. FF and N). Grievant received a Step II response on November 7, 2005, but did not file an appeal until February 22, 2006. Step III responses are due within ten days of receipt of the Step II response. PD 03.02.130(HH).

11.   MCF-2006-06-437-123 & MCF-2006-06-437z & MCF-2006-06-437-12z: These grievances, the first two of which are listed in Defendant CMS' motion for summary judgment (Dkt. # 58 Exs. E & EE) and the last which is listed on MDOC's list of grievances (Dkt. # 75, Ex. A), address the same grievance filed on June 12, 2006. The grievance complains of inappropriate medical procedures affecting Plaintiff's treatment for spinal arthritis and chronic lung disease (Dkt. # 58, Ex. E). The Step II response to this grievance noted that the grievance indicated that the incident(s) occurred from May 1, 2006, until June 10, 2006, and as such the grievance, with regard to many of the complaints, was untimely. It was also noted this grievance was incorrectly filed as it contained multiple, unrelated issues.[5]

---

[4] This grievance is listed twice in Defendants' motion for summary judgment as Exhibits N and FF (Dkt. # 58).

[5] If a grievance contains multiple, unrelated issues, the Policy Directive provides that it will be rejected. PD 03.02.130(G)(1). Thus, a prisoner may not use the grievance form to list out all the difference complaints he may have. A grievance must give the facility fair notice of

12.     MCF-2006-06-442-28A: Filed on June 13, 2006, this grievance, complaining of a lack of treatment for Plaintiff's right knee, was dismissed as untimely (Dkt. # 58, Ex. M). The Step II response to this grievance noted that the grievance indicates that the incident(s) occurred from May 6, 2006, until June 7, 2006, and as such the grievance, with regard to many of the complaints is untimely. The grievance was also duplicative of another grievance (MCF-2006-01-25-12D).

13.     MCF-2006-06-438-123(z)[6]: In this grievance dated June 12, 2006, Plaintiff complained of a lack of treatment for his shoulder injury (Dkt. # 58, Ex. J). Plaintiff listed the initial date of incident as May 1, 2006, and stated that the incident was "on going." *Id.* The Step II response noted that Plaintiff's grievance, listing an "on going" policy violation, was untimely at Step I and was rejected accordingly.

14.     MCF-2006-12-969-28A: Plaintiff, on December 28, 2006, filed this grievance complaining of deliberate indifference to his medical condition (Dkt. # 58, Ex. C). Plaintiff listed the date of incident as December 1, 2006, through December 12-23, 2006, as well as "on going." The grievance was dismissed as untimely given that the events in question occurred more than 5 days prior to Plaintiff's filing of the grievance. The grievance was also rejected at Step I as duplicative of another grievance (MCF-2006-06-432-122).

15.     MCF2006-12-968-28A: Filed on December 28, 2006, this grievance, alleging a lack of treatment for acid reflux, was rejected as untimely because Plaintiff complained of an incident that occurred on December 12, 2006, but did not file his grievance until December 22, 2006 (Dkt. # 58, Ex. D). The grievance was also rejected as duplicative of another grievance (MCF-2006-02-145-121). The Step I response was upheld at Steps II and III.

16.     MRF-2005-05-762-28E: This grievance, filed on May 26, 2005, was dismissed as untimely (Dkt. # 58, Ex. GG). The grievance also raised only legal claims, and named no defendants.

(vi.)**Grievances that are Duplicative**:

        If a grievance is duplicative of a previously filed grievance, the Policy Directive states that

it will be rejected. PD 03.02.130(G)(1). The Policy Directive does not define "duplicate" and, to

---

the alleged misconduct so that it has the chance to provide a remedy. *See, e.g., Bell v. Konteh*, 450 F. 3d. 651, 654 (6th Cir. 2006). Listing in a single grievance multiple issues diminishes the prison's opportunity to correct the problem.

        [6]CMS lists this grievance as MCF-2006-06-438-123 and MDOC lists it as MCF-2006-06-438-12z.

some extent, Plaintiff and Defendants interpret the term differently. Plaintiff feels that if a prior grievance, addressing the same issue, has been rejected, or if a grievance is on going, Plaintiff can file additional grievances asking for the issue to be corrected (Dkt. # 77, p. 10). Plaintiff states that Defendants' approach allows an inmate to only "beg for help once." *Id.* Defendants disagree as their interpretation seems to be that because the same factual circumstances are present, Plaintiff cannot repeatedly file grievances for the same issue.

When two possible interpretations of a rule or regulation are present, courts give deference to the interpretation of the agency administering the rule. *See, e.g., Gerber v. Hickman*, 291 F. 3d. 617, 626 (9th Cir. 2003) ("Wardens interpretation of the regulation is entitled to deference."). Thus, because Defendants' interpretation is not unreasonable, it is concluded that "duplicative" refers to Plaintiff's filing multiple grievances addressing the same fact pattern.

The following grievances are rejected as duplicative of other grievances:

17. <u>MCF-2006-06-469-28A:</u> Filed on June 27, 2006, this grievance, complaining of generally inadequate medical care, was rejected as duplicative, per PD 03.02.130(G)(1), of several grievances (MCF-06-01-00052-12F; MCF-06-01-00026-12F; MCF-06-06-00439-123; MCF-06-06-00437-123; MCF-06-02-00145-121) (Dkt. # 58, Ex. BB). Plaintiff, consistent with PD 03.02.130(Y), was told why this grievance was rejected. *Id.*

18. <u>URF-2005-07-1381-28A:</u> This grievance, received by MDOC on September 22, 2005, complaining of a lack of proper medicine(s) as well as bone and back pain, was rejected at Step I as duplicative of another grievance (URF-2005-07-01205-12i). The grievance also raised multiple, unrelated issues (Dkt. # 58, Ex. AA). The reviewer's decision was upheld at Steps II and III. Listing a date of incident from April 24, 2005, until July 15, 2007, this grievance could also have been rejected as untimely.

19. <u>URF-2005-07-1382-12i:</u> This grievance, received on September 22, 2005, complaining generally of a lack of adequate medical care, was rejected at Step I as duplicative (Dkt. # 75, Ex. H). At Step III, the reviewer upheld this dismissal noting that Plaintiff's grievance and subsequent appeals were illegible,[7] and raised multiple, unrelated issues. Plaintiff was

---

[7]The Step III appeal was "barely legible."

referred to PD 04.06.135 for guidance in filing medical grievances.

20.  URF-2005-07-1301-28A: This grievance, received on September 1, 2005, addressing Plaintiff's failure to have his serious medical issues addressed, was rejected at Step I as duplicative (URF-2005-07-1205-12I) (Dkt. # 58, Ex. O).  The decision at Step I was upheld at Steps II and III.

21.  MCF-2006-12-970-28A: Filed on December 28, 2006, this grievance, complaining of a lack of care for a pinched back nerve, was dismissed as duplicative of a prior grievance (MCF-06-06-439-123) (Dkt. # 58, Ex. G).  It was noted, at Step II, that the grievance was vague[8] and raised multiple unrelated issues.

22.  MCF-2006-12-964-28A: This grievance complained that Plaintiff was being denied access to medical care for pain in his ribs (Dkt. # 58, Ex. I).  Plaintiff's Step I grievance was rejected as duplicative (MCF-06-06-439-123), and raising multiple, unrelated matters.

23.  MCF-2006-12-967-28A: Filed on December 28, 2006, this grievance, complaining of ongoing bumps, lesions and growths, was rejected at Step I as duplicative (MCF-06-01-26-12f).  The grievance reviewer also noted that the grievance was vague, grieved multiple unrelated issues and was untimely because it raised issues that occurred from December 1, 2006, through December 12, 2006 (and on going).

24.  MCF-2006-01-26-12F: Filed on January 10, 2006, this grievance complained that Plaintiff had not received the necessary medications in violation of his eighth amendment rights (Dkt. # 58, Ex. D).  Specifically, Plaintiff complained that his skin medication had been changed.  The Step II grievance response noted that this grievance was rejected at Step I on account of it being duplicative (MCF-2006-02-145-121).[9]

25.  MCF-2006-12-965-28A: Filed on December 27, 2006, this grievance alleged that Plaintiff was not receiving the appropriate cream for his "follicolitis" (Dkt. # 58, Ex. W).  This grievance was rejected at Step I as it was: duplicative (MCF-06-01-26-12F), addressed multiple, unrelated issues and was vague.

26.  MCF-2006-12-971-28A: Filed on December 28, 2006, this grievance, complaining of a

---

[8]A grievance may be rejected if it is vague.  PD 03.02.130(G)(1).  Prisoners may only submit grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant.  PD 03.02.130(E).  Further, prisoners must include in their grievances "the facts involving the issue being grieved (i.e. who, what, when, where, why, how)."  PD 03.02.130(T).  If a grievance does not describe how the prisoner suffered injuries, and by whom or what, it will be rejected for vagueness.

[9]In their Motion for Summary Judgment (Dkt. # 58, p. 4), Defendant MDOC, et. al., failed to note that this grievance had been rejected.

lack of treatment for Plaintiff's chronic knee pain, was rejected as untimely, duplicative (MCF06-01-26-12f), vague and raising multiple, unrelated issues (Dkt. #58, Ex. H).

## (vii.) **Grievances That Were Fully Exhausted:**

27.    MCF-2006-01-25-12d:[10] Filed on January 10, 2006, Plaintiff complained that he needed, but had not received necessary back and knee surgery  (Dkt. # 58, Ex. HH).  Plaintiff fully grieved this complaint through Step III.

28.    MCF-2006-01-35-12F: Filed on January 17, 2006, this grievance claimed that Plaintiff needed an extra snack bag to go with his medication (Dkt. # 58, Ex. II).  The grievance was denied as it was determined that Plaintiff was already receiving an evening snack, per dietician's order.  Plaintiff fully grieved this complaint through Step III.

29.    MCF-2006-01-41-12D: Plaintiff, filed this grievance on January 18, 2006, seeking a cane, boxer shorts, a hot water bottle and an extra pillow (Dkt. # 58, Ex. DD).  Plaintiff received the cane and boxer shorts, but the other items were denied as they were deemed not medically necessary.  Plaintiff fully grieved this complaint through Step III.

30.    URF-2005-07-1205-12I: MDOC received this grievance on July 1, 2005 (Dkt. # 75, Ex. A).  Plaintiff filed this grievance against Mr. West, nursing authority supervisor; and Mr. Sherry, the Warden; for allowing employees to violate a prisoner's rights per MDOC policy (Dkt. # 58 Ex. P).  Plaintiff at Steps I, II and III was deemed to have received appropriate care including provision of a new knee brace, a changed antibiotic and re-evaluation of shoulder and back pain (Dkt. # 58, Ex. P, p. 3).  Plaintiff fully grieved this complaint through Step III.

31.    MCF-2006-02-111-12z:[11] Filed on February 6, 2006, this grievance alleged that Mr. Whalen, of the medical staff, spoke to Plaintiff in a demeaning manner ( Dkt. # 58, Ex. CC).  Plaintiff disputed the assertion of witnesses that Mr. Whalen acted professionally.  Plaintiff fully grieved this complaint through Step III.

32.    MCF-2006-06-439-123 & MCF-2006-06-439 & MCF-2006-06-439-12z: These grievances, the first two of which are listed in Defendant CMS' motion for summary judgment (Dkt. # 58 Exs. L & T) and the last which is listed on MDOC's list of grievances (Dkt. # 75, Ex. A), address the same grievance filed on June 12, 2006.  Plaintiff filed this grievance complaining of back pain and inadequate medical care to treat this pain (Dkt. # 58, Ex. L & T).  Plaintiff timely filed his grievances through Steps I, II and III.

_____

[10]Defendant CMS listed this grievance as MCF-2006-01-25 (Dkt. # 58, Ex. HH).

[11]Defendant CMS lists this grievance, on its grievance chart (Dkt. # 58, p. 9) as MCF050200111.  In its exhibits, the grievance is listed as MCF060200111 (Dkt. # 58, Ex. CC) which is consistent with the MDOC's chart of current grievances (Dkt. # 75, Ex. A).

33. <u>URF-2005-09-1896-12I:</u> On November 17, 2007, MDOC received Plaintiff's grievance complaining of lower back and leg pain as well as a delay in refilling prescriptions (Dkt. # 59, Ex. K). The grievance was properly grieved through Step III. Responses to Plaintiff's grievance note that he was provided with a cane, prescribed Clinoril and subject to an X-ray examination.

34. <u>URF-2005-09-1895-12F:</u> On November 17, 2007, MDOC received this grievance complaining that Plaintiff's "follicolitis" is not being properly treated (Dkt. # 58, Ex. Z). The response to Plaintiff's grievance indicated that he is receiving the following medications to treat his condition: Retin-A cream, hydrocortisone cream, Mycolog cream, Clindomycin gel, Doxycycline 100 mg daily, orally and Physoderm. Plaintiff timely filed his grievances through Steps I, II and III.

35. <u>URF-2005-06-1115-12I:</u> This grievance, received by the MDOC on August 23, 2005, sought to resolve Plaintiff's longstanding medical issues including his desire to have knee, left shoulder and lower back surgery (Dkt. # 58, Ex. Q). Plaintiff names no Defendant, and the Step I response notes that Plaintiff has on six occasions refused to go to surgery or pre-operative lab. Plaintiff timely filed his grievances through Steps I, II and III.

36. <u>URF-2005-10-1979-12F:</u> In this grievance, filed on November 30, 2005, Plaintiff complained that he was not receiving refills of his skin prescription (Dkt. # 58, Ex. Y). Plaintiff named no defendants in his grievance. Responses at each Step indicated that Plaintiff had received his medication "without delay or disruption." Plaintiff timely filed his grievances through Steps I, II and III.

37. <u>MCF-2006-01-27-12F:</u> On May 26, 2005, Plaintiff filed this grievance complaining that he was not provided a flu shot (Dkt. # 75, Ex. E). Plaintiff refers to Dr. Kim, who tried to resolve the matter, but no Defendant was actually named. Plaintiff was denied a flu shot after it was determined that Plaintiff failed to meet the guidelines for receiving one. Plaintiff timely filed his grievances through Steps I, II and III.

Given Plaintiff's failure to properly follow the MDOC's grievance process, **IT IS**

**RECOMMENDED** that the following grievances be dismissed:

1. <u>MRF-2004-10-1154-12I:</u>
2. <u>HVM-2004-01-10-12D3:</u>
3. <u>LRF-2002-01-98-12D1:</u>
4. <u>HVM-2003-04-368-01b:</u>
5. <u>URF-2005-06–1177-21c:</u>
6. <u>URF-2005-07-1232-12z:</u>
7. <u>MRF-2005-06-803-15b:</u>
8. <u>200237-27b:</u>

9.       <u>MCF-2006-01-52-12F:</u>
10.     <u>MRF-2005-06-904-12D:</u>
11.     <u>MCF-2006-06-437-12z:</u>[12]
12.     <u>MCF-2006-06-442-28A:</u>
13.     <u>MCF-2006-06-438-123(z?):</u>
14.     <u>MCF-2006-12-969-28A:</u>
15.     <u>MCF2006-12-968-28A:</u>
16.     <u>MRF-2005-05-762-28E:</u>
17.     <u>MCF-2006-06-469-28A:</u>
18.     <u>URF-2005-07-1381-28A:</u>
19.     <u>URF-2005-07-1382-12i:</u>
20.     <u>URF-2005-07-1301-28A:</u>
21.     <u>MCF-2006-12-970-28A:</u>
22.     <u>MCF-2006-12-964-28A:</u>
23.     <u>MCF-2006-12-967-28A:</u>
24.     <u>MCF-2006-01-26-12F:</u>
25.     <u>MCF-2006-12-965-28A:</u>
26.     <u>MCF-2006-12-971-28A:</u>

**B.**    **Eighth Amendment Analysis of Exhausted Claims:**

With regard to the claims on the grievances Plaintiff fully exhausted, this Court is required examine each one to determine whether or not the grievance or other submissions concerning the grievance provide sufficient facts to uphold a claim of deliberate indifference under the Eighth Amendment. In *Estelle*, the Supreme Court concluded that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment. *Id*. at 104. The *Estelle* Court recognized that even in less serious cases, where the prisoner does not experience severe torment or a lingering death, the infliction of unnecessary suffering is inconsistent with standards of decency. *Id*. at 103. Specifically, the Supreme Court stated: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

---

[12] Also referred to as: MCF-2006-06-437-123 & MCF-2006-06-437z.

serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Id.* at 106.

"The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.' " *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir.1987), quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978).  In examining the grievances which Plaintiff properly exhausted, it is clear that none of the claims raised by the Plaintiff meet the standard articulated by *Estelle*.

In grievance, MCF-2006-01-25-12d,[13] Plaintiff complained that he needed, but had not received necessary back and knee surgery  (Dkt. # 58, Ex. HH).  Upon reviewing Plaintiff's grievance, it was determined that such "specialty care is not medically indicated at this time."  *Id.* Plaintiff has not provided any medically competent evidence that denial of his back and neck surgery was more than medical neglect but constituted deliberate indifference to his serious medical condition.  If reasonable medical practitioners would differ over the necessity of he surgery, this denial of surgery cannot constitute deliberate indifference.  Plaintiff has failed to submit any evidence that no competent medical practitioner would agree that the surgery was not medically indicated at the time.

On January 17, 2006, Plaintiff filed th grievance MCF-2006-01-35-12F claiming that he needed an extra snack bag to go with his medication (Dkt. # 58, Ex. II).  The grievance was denied as it was determined that Plaintiff was already receiving an evening snack, per dietician's order.  Again, Plaintiff provides no evidence that this even violated a standard of medical care let

---

[13]Defendant CMS listed this grievance as MCF-2006-01-25 (Dkt. # 58, Ex. HH).

alone demonstrated a reckless disregard of Plaintiff's medical condition.

On January 18, 2006, Plaintiff filed grievance MCF-2006-01-41-12D seeking a cane, boxer shorts, a hot water bottle and an extra pillow (Dkt. # 58, Ex. DD). Plaintiff received the cane and boxer shorts, but the other items were denied as they were deemed not medically necessary. Again, Plaintiff provides no medically competent evidence that this determination was not appropriate nor that no medically competent practitioner would agree with it.

The MDOC received grievance URF-2005-07-1205-12I on July 1, 2005 (Dkt. # 75, Ex. A). Plaintiff filed this grievance against Mr. West, nursing authority supervisor; and Mr. Sherry, the Warden; for allowing employees to violate prisoner's rights per MDOC policy (Dkt. # 58 Ex. P). Plaintiff, at Steps I, II and III, was deemed to have received appropriate care including provision of a new knee brace, a changed antibiotic and re-evaluation of shoulder and back pain (Dkt. # 58, Ex. P, p. 3). Again, Plaintiff provides no medically competent evidence that this determination was not appropriate nor that no medically competent practitioner would agree with it.

Filed on February 6, 2006, filed grievance MCF-2006-02-111-12z[14] alleged that Mr. Whalen, of the medical staff, spoke to Plaintiff in a demeaning manner ( Dkt. # 58, Ex. CC). Plaintiff disputed the assertion of witnesses that Mr. Whalen acted professionally. While talking to an inmate in a demeaning manner may be evidence of deliberate indifference regarding some other medically necessary treatment that was being denied, such demeaning talk cannot itself

---

[14]Defendant CMS lists this grievance, on its grievance chart (Dkt. # 58, p. 9) as MCF050200111. In its exhibits, the grievance is listed as MCF060200111 (Dkt. # 58, Ex. CC) which is consistent with the MDOC's chart of current grievances (Dkt. # 75, Ex. A).

constitute an Eighth Amendment violation absent extraordinary circumstances not present here.[15]

Plaintiff in grievance MCF-2006-06-439-12z, filed on June 12, 2006, complained of back pain and inadequate medical care to treat this pain (Dkt. # 58, Ex. L & T). It was noted at Step II that Plaintiff refused an examination on May 4, 2006, and that he was "provided appropriate care" (Dkt # 58, Ex. L). Again, Plaintiff submits no evidence sufficient to allow a fact-finder to determine that ths denial of different pain medication was deliberate indifference.

On November 17, 2007, MDOC received Plaintiff's grievance URF-2005-09-1896-12I complaining of lower back and leg pain as well as a delay in refilling prescriptions (Dkt. # 59, Ex. K). The grievance was properly grieved through Step III. Responses to Plaintiff's grievance note that he was provided with a cane, prescribed Clinoril and subject to an X-ray examination. *Id.* Clinoril is a non-steroidal, anti-inflammatory drug for relief of arthritis pain and other symptoms.[16] Plaintiff submits no evidence from which deliberate indifference could be found concerning this grievance.

On November 17, 2007, MDOC received this grievance URF-2005-09-1895-12F complaining that Plaintiff's "follicolitis" is not being properly treated (Dkt. # 58, Ex. Z). The response to Plaintiff's grievance indicated that he is receiving the following medications to treat his condition: Retin-A cream, hydrocortisone cream, Mycolog cream, Clindomycin gel, Doxycycline 100 mg daily, orally and Physoderm. Again Plaintiff submits no evidence from which deliberate indifference could be found concerning this treatment.

---

[15] E.g. a psychiatrist taunting a potentially suicidal patient to the point the patient undertook some self-destructive action could demonstrate an actionable deliberate indifference based on the demeaning words.

[16] http://www.rxlist.com/cgi/generic/sulindac_ids.htm

This grievance URF-2005-06-1115-12I, received by the MDOC on August 23, 2005, raised Plaintiff's longstanding medical issues including his desire to have knee, left shoulder and lower back surgery (Dkt. # 58, Ex. Q). Plaintiff names no Defendant, and the Step I response notes that Plaintiff has on six occasions refused to go to surgery or pre-operative lab. *Id.*

Filed on November 30, 2005, grievance URF-2005-10-1979-12F states that Plaintiff was not receiving refills of his skin prescription (Dkt. # 58, Ex. Y). Plaintiff named no defendants in his grievance. Responses at each Step indicated that Plaintiff had received his medication "without delay or disruption." *Id.*

On May 26, 2005, Plaintiff filed grievance MCF-2006-01-27-12F complaining that he was not provided a flu shot (Dkt. # 75, Ex. E). Plaintiff was denied a flu shot after it was determined that Plaintiff failed to meet the guidelines for receiving one. Plaintiff submits no evidence from which deliberate indifference could be found concerning this denial of a flu shot.

In each of these grievances, Plaintiff complains about the care provided to him by prison officials. Plaintiff was never denied health care, but rather he disputes the medical decisions made by professional health care providers. Plaintiff has failed to provide any competent medical data from which a jury could conclude that any of these situations involved deliberate indifference by health care officials causing a risk of serious harm to his well-being and health. At best, these grievance involve disputes "over the adequacy of the treatment, [for which] federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860-61 n. 5.

Because Plaintiff has failed to demonstrate sufficient evidence from which deliberate indifference on the part of the Defendants could be found regarding the fully exhausted

grievances[17] his Eighth Amendment claims concerning them must fail.

## V.   RECOMMENDATION

For these reasons indicated above, it is **RECOMMENDED** that Defendants' Motions for

Summary Judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within ten (10) days of service of a copy

hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S.

140 (1985); *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505 (6th Cir. 1991); *United*

*States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but

fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs*., 931 F.2d 390, 401 (6th

Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.  If

the Court determines any objections are without merit, it may rule without awaiting the response

---

[17] MCF-2006-01-25-12d; MCF-2006-01-35-12F; MCF-2006-01-41-12D; URF-2005-07-1205-12I; MCF-2006-02-111-12z; MCF-2006-06-439-12z; URF-2005-09-1896-12I; URF-2005-09-1895-12F; URF-2005-06-1115-12I; URF-2005-10-1979-12F; and MCF-2006-01-27-12F.

to the objections.


Dated: January 16, 2008          s/Steven D. Pepe_____

Ann Arbor, Michigan          United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 16, 2008.


s/Deadrea Eldridge_____

Courtroom Deputy Clerk